

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00116-CR

_____

AMBER DAWN HOSELTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 22791

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Amber Dawn Hoselton pled guilty to indecency with a child. A bench trial on punishment resulted in ten years' imprisonment in the Texas Department of Criminal Justice–Institutional Division with a recommendation that Hoselton be placed in the sex offender rehabilitation program. On appeal, Hoselton argues the trial court erred in: 1) quashing her subpoena of the district attorney; 2) failing to disqualify the entire office due to the district attorney's prior representation of her stepfather; 3) excluding her stepfather's testimony regarding his experience in community supervision; and 4) striking her expert's testimony for failing to comply with court orders. We affirm.

## I.      Quashing Hoselton's Subpoena of the District Attorney

Hoselton argues that the trial court's action in quashing the subpoena of district attorney Gary Young denied her the constitutional right of compulsory process. A claim that the trial court improperly quashed a subpoena is reviewed for an abuse of discretion. *Moore v. State*, 109 S.W.3d 537, 543 (Tex. App.—Tyler 2001, pet. denied); *Muennink v. State*, 933 S.W.2d 677, 684 (Tex. App.—San Antonio 1996, pet. ref'd).

Criminal defendants have a right to compulsory process for obtaining witnesses. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. This right "is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Sparkman v. State*, 997 S.W.2d 660, 666–67 (Tex. App.—Texarkana 1999, no pet.) (quoting *Coleman v. State*, 966 S.W.2d 525, 527 (Tex. Crim.

2

App. 1998) (finding no error in trial court's action quashing subpoena of district attorney)). However, the right is not absolute and "does not guarantee the right to secure the attendance and testimony of any and all witnesses." *Id.* at 667. In order to exercise the right of compulsory process, the defendant must make a plausible showing to the trial court that the witness' testimony would be both material and favorable to the defense. *Coleman*, 966 S.W.2d at 527–28. "Where the burden of showing materiality and favorableness is not placed on the defendant, 'frivolous and annoying requests [c]ould make the trial endless and unduly burdensome on the Court and all officers thereof.'" *Sparkman*, 997 S.W.2d at 667 (quoting *Coleman*, 966 S.W.2d at 528).

Young previously represented Hoselton's stepfather on indecency charges in which she was the victim. As a result, her stepfather was placed on community supervision and was required to complete a sex offender treatment program overseen by Dr. Joan Ondrovik. At the hearing on the motion to quash, Hoselton sought to call Young to testify "in mitigation" about all of the rules and regulations concerning treatment of sexual offenders. She explained that Young had "firsthand knowledge of all the hoops" her stepfather had to go through. The trial court decided that this type of testimony was not relevant to Hoselton's case and that other witnesses could be procured to testify to the general regulations persons placed in sex offender treatment programs are required to undergo. The court suggested the evidence be offered through Hoselton's designated witnesses Ondrovik or Luke Luttrell, who worked for Lamar County Adult Community Supervision, the department which set such rules.

The hearing on punishment was tried to the judge, who assured Hoselton's counsel he was familiar with the terms and conditions of sex offender community supervision. A trial judge may not place any person convicted of indecency of a child on traditional community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g (Vernon Supp. 2009). The trial court may defer adjudication of guilt and place a defendant on community supervision for this offense only if the trial court determines that such placement is in the best interest of the victim. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a) (Vernon Supp. 2009). Thus, Young's "firsthand knowledge of all the hoops" involved in sex offender community supervision had no bearing on whether placing Hoselton on deferred adjudication community supervision would be in the victim's best interest. The reality of the situation is this: Hoselton had pled guilty to this offense and was attempting to obtain a community supervision sentence; the district attorney elected to try the case rather than recommend such a sentence to the court. Under these circumstances, we do not believe the trial court abused its discretion in concluding that Young's testimony would not be material or beneficial to Hoselton.

We find the trial court did not abuse its discretion in quashing the subpoena of the district attorney. Hoselton's first point of error is overruled.

## II.    Denial of Motion to Disqualify the District Attorney's Office

Hoselton also sought "to disqualify the Lamar County attorney's office from prosecution in this case, for the reason being that we do intend to call [the stepfather] as a witness in this case." The motion was supported only by the fact that Young had represented the stepfather and had

4

particular knowledge of Hoselton as a victim in that case. We review the trial court's decision in denying the disqualification for abuse of discretion. *Landers v. State*, 256 S.W.3d 295, 303 (Tex. Crim. App. 2008).

Hoselton points this Court to the Texas Disciplinary Rules of Professional Conduct and suggests a conflict of interest exists. Rule 1.09(a)(3), entitled conflict of interest, states: "[w]ithout prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a)(3). Since Hoselton was never Young's client, this rule is inapplicable.[1] Further, the Texas Court of Criminal Appeals has held that a "trial court 'is without legal authority' to disqualify an elected district attorney solely on the basis of a violation of the Texas Disciplinary Rules of Professional Conduct." *Landers*, 256 S.W.3d at 306 (quoting *Eidson*, 793 S.W.2d at 6–7; *In re State ex rel. Young*, 236 S.W.3d 207, 213 (Tex. Crim. App. 2007)).[2]

The Texas Court of Criminal Appeals has set a very high standard for the disqualification of an elected attorney. "A trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due process violation." *Fluellen v. State*, 104 S.W.3d 152, 161 (Tex. App.—Texarkana 2003, no pet.) (citing *Pirtle*, 887 S.W.2d at 927;

---

[1]The only binding authority cited by Hoselton involved situations where the district attorney had previously represented a defendant. Those cases do not apply. *See generally State ex rel. Hill v. Pirtle*, 887 S.W.2d 921 (Tex. Crim. App. 1994); *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1 (Tex. Crim. App. 1990).

[2]The Texas Court of Criminal Appeals tells us that even though the rules of conduct cannot solely be the basis to disqualify the district attorney, "this does not mean that a prosecutor need not comply with the Texas Disciplinary Rules of Conduct . . . ." *Landers*, 256 S.W.3d at 306 n.35.

5

*Edwards*, 793 S.W.2d at 6). Such a violation requires "actual prejudice" to the defendant, not just the threat of prejudice. Actual prejudice may occur if:

1. The prosecuting attorney has previously personally represented the defendant in a substantially related matter; and

2. The prosecuting attorney obtained confidential information by virtue of that prior representation which was used to the defendant's disadvantage. *Landers*, 256 S.W.3d at 305.

We cannot find that Hoselton suffered actual prejudice, so it follows that the trial court did not abuse its discretion in denying the motion to disqualify. Accordingly, we overrule this point of error.

## III.    Prohibiting Hoselton's Stepfather from Testifying

Hoselton attempted to call the stepfather "to give a layperson's opinion as to the program, what he had to go through in regard to the program and the affect that it can have on a person's life." The court sustained the State's objection to relevance of the testimony. It emphasized "we're not sitting here trying whether this sex treatment program -- sex offender program is good, bad, how it's been in the past, how it's going to be in the future. We're here to set punishment on this defendant."

The trial court is the sole arbiter on the threshold question of what constitutes relevant evidence during the punishment phase of a trial. *Mitchell v. State*, 931 S.W.2d 950, 952 (Tex. Crim. App. 1996). Its decision is reviewed under an abuse of discretion standard. *Id.*; *Reed v. State*, 48 S.W.3d 856, 859 (Tex. App.—Texarkana 2001, pet. ref'd). In the context of

6

punishment, relevant evidence is that which helps a fact-finder "tailor the sentence to the particular offense" and "tailor the sentence to the particular defendant." *Rogers v. State*, 991 S.W.2d 262, 265 (Tex. Crim. App. 1999).

This case is similar to that of *Schultze v. State*, 177 S.W.3d 26, 41 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd), and *Schielack v. State*, 992 S.W.2d 639, 641–42 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). The trial court in both cases held that the defendant could not offer testimony from a third party about that person's experiences in prison. *Schultze*, 177 S.W.3d at 42; S*chielack*, 992 S.W.2d at 642. The courts reasoned such information would be irrelevant since there was no evidence the defendants' experiences would be the same as the third party's. *Schultze*, 177 S.W.3d at 42; *Schielack*, 992 S.W.2d at 642. Similarly, there was no evidence in this case that Hoselton's stepfather's experience in the sex offender treatment program would be the same as her experience. As stated in *Schultze* and *Schielack*, "we believe that the trial court's decision to exclude this testimony was at least within the zone of reasonable disagreement." *Schultze*, 177 S.W.3d at 42–43 (quoting *Schielack*, 992 S.W.2d at 642–43). Likewise, we do not find the trial court abused its discretion in excluding the stepfather's testimony, which would not serve the purpose of tailoring the sentence to Hoselton.

We overrule this point of error.

## IV.   Striking Defense Expert Testimony

When the State discovered Hoselton intended to call Ondrovik, who was appointed by the court as an expert, it sent Ondrovik a subpoena duces tecum seeking production of her reports and

notes.   After failure to produce an expert report or any supporting documentation, the trial court granted the State's motion to compel compliance with a subpoena duces tecum.   At a March 30, 2009, hearing on the State's motion to compel, the State asked the trial court to require disclosure of Ondrovik's reports prior to trial.   Later, the State requested the expert provide underlying facts or data under Rule 705 of the Texas Rules of Evidence.   TEX. R. EVID. 705.   Hoselton argued that Rule 705 did not authorize such pretrial discovery on behalf of the State.   The trial judge told Hoselton's counsel to either turn over Ondrovik's reports or "keep her off the stand and you can go hire you somebody else to testify."   In the written order, it required Hoselton "must produce the requested document by April 15, 2009 or be precluded from calling Dr. Joann Ondrovik as a witness in this cause."

Hoselton failed to provide all of Ondrovik's materials to the State on April 15.   On April 17, the State complained to the trial court that they had not been provided.   The trial judge warned Hoselton, "If you don't have that information by 5:00 today, she's not going to testify. We are not playing those games.   Do you understand?   If it's not here, it will not be admitted."

During the course of the trial, Ondrovik was asked on cross-examination what medical reports she had reviewed; she responded that she had seen some of Hoselton's hospital reports. The State then argued that it was to "receive everything that Dr. Ondrovik used, medical records, whatever" and moved to strike the entire testimony of Ondrovik.   Rejecting Hoselton's

8

explanation that she had provided all documents available at the time, the trial court struck all of Ondrovik's testimony.[3]

Ondrovik's testimony was aimed at convincing the trial judge to place Hoselton under community supervision with required sex offender treatment. Prior to the striking of her testimony, she testified Hoselton was "a very positive candidate for the program." She stated that the sex offender treatment program was "stringent" and that some people had "actually chosen to go to prison rather than comply will [sic] all of the requirements of the program." Ondrovik ultimately testified that Hoselton "ha[d] a healthy respect for prison. She does not want to go to prison" and that there were "ways acceptable within the treatment community to verify if [Hoselton] complie[d] with the terms and conditions of probation."

Hoselton complains that the trial court's sanction for her own failure to comply with the court's orders were too severe.

A trial court's decision on whether to allow an expert witness to testify is reviewed for abuse of discretion. *Johnson v. State*, 233 S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Stoker v. State*, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989)[4] (holding trial court did not abuse discretion in failing to allow defense expert witness to testify due to failure to comply with discovery order despite evidence of bad faith). A trial court abuses its discretion

---

[3]The record reveals that the district attorney's office had received a report from Ondrovik and the complaint was that it had not received a medical record reviewed by Ondrovik. Ondrovik stated the medical record came in later and merely "confirmed what was . . . in my report, that I already knew."
[4]The court later reconsidered its application of waiver or preservation in *Stoker*, but left the merits of the decision intact. *Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998).

when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990); *Johnson*, 233 S.W.3d at 114. We will uphold the trial court's decision if it is within the zone of reasonable disagreement. *Johnson*, 233 S.W.3d at 114.

Hoselton's argument on appeal is that the trial court's action in striking the expert's entire testimony was improper. To support this contention, she cites us to the Texas Rules of Civil Procedure and several civil cases applying those rules and argues that striking the testimony was an excessive sanction. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Of course, this is not a civil case and the Texas Rules of Civil Procedure are not applicable. TEX. R. CIV. P. 2 ("These rules shall govern the procedure . . . in all actions of a civil nature, with such exceptions as may be hereinafter stated.").

The more basic issue in this case is whether the trial court had the authority to order pretrial discovery of the expert's reports, examination records of Hoselton, and all documents reviewed and thereafter exclude the expert's testimony for failing to fully provide the documents to the State.

Article 39.14 is "a limited exception to the general rule that the State cannot obtain discovery of the witnesses the defendant intends to call." *Thornton v. State*, 37 S.W.3d 490, 493 (Tex. App.—Texarkana 2000, pet. ref'd). On motion of a party, the trial court may order disclosure of "the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence." TEX. CODE CRIM. PROC.

ANN. art. 39.14 (Vernon Supp. 2009). Rule 705 states that an "expert may testify in terms of opinion or inference and give the expert's reasons therefor without any prior disclosure of the underlying facts or data, unless the court requires otherwise." TEX. R. EVID. 705. While it was proper to require Ondrovik to disclose the facts or data underlying her opinion so that the trial court could determine if the data provided a basis for the opinion and was admissible, there is no general right by the State for pretrial discovery from the defendant.[5] *Ramirez v. State*, 815 S.W.2d 636, 651 (Tex. Crim. App. 1991); *Thornton*, 37 S.W.3d at 492. We emphasize that our opinion does not expressly or implicitly interpret Article 39.14, which provides only for disclosure of names and addresses of experts, as requiring pretrial discovery of medical reports, records, and other such documentation. But, this issue of the State's right of discovery and the concomitant authority to enforce such discovery order was not briefed or presented on this appeal. *See Gerron v. State*, 93 S.W.3d 597 (Tex. Crim. App. 2003).[6] We do not believe Hoselton's argument regarding the Texas Rules of Civil Procedure provides any basis for this Court to conclude the trial court erred.

---

[5] We recognize that certain recently enacted statutes grant the State some right to depose witnesses in certain instances. *See* TEX. CODE CRIM. PROC. ANN. arts. 39.02, 39.025 (Vernon Supp. 2009).

[6] We cannot decide this matter based on a point not briefed. If Hoselton had argued that the trial court had no authority to issue and enforce a pretrial discovery order, the State could have responded to it. One possible State argument could have been that the trial court has inherent authority to allow the State some pretrial discovery outside that authorized by statute. *See Thornton*, 37 S.W.3d at 492. We express no opinion on that question.

11

Even if we found that error was present, nonconstitutional error "that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2. Generally, a trial judge cannot assess community supervision for a defendant adjudged guilty of indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(c). However, deferred adjudication community supervision is available "only if the judge makes a finding in open court that placing the defendant on community supervision is in the best interest of the victim." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a). After noting the victim's symptoms of post-traumatic stress from Hoselton's repeated abuse, including being burned with a lighter on his genital area, State expert Cathy Floyd testified it would be in the best interest of the eight-year-old victim for Hoselton to be denied community supervision. Hoselton failed to contest this evaluation, and instead focused her defense on her suitability for community supervision. Ondrovik was not involved with the victim, and her testimony was not relevant to this necessary finding involving the victim's best interest. Thus, even had this Court found trial error in the exclusion of Ondrovik's testimony, in

this context, it did not affect Hoselton's substantial rights and, therefore, must be disregarded. Tex. R. App. P. 44.2(b).

Consequently, we overrule Hoselton's last point of error.

**V.      Conclusion**

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:      February 10, 2010
Date Decided:        March 18, 2010

Do Not Publish